Thank you, Your Honor. May it please the Court, Joseph King on behalf of defendant appellate Moises Zelaya-Veliz. To my right is Donna Bitterman. She's co-defending counsel, represents Gilberto Morales. Chris Amel, she's also present, who represents Jonathan Zelaya-Veliz. Behind me, Dwight Crawley represents Santos Gutierrez Castro. Mr. Gutierrez Castro did raise a sufficiency argument before the Court. We intend to rest on the briefs, but Mr. Crawley is present in case the Court has any questions. Mr. Zimmerman represents co-defendant Luis Gonzalez. Unfortunately, Mr. Zimmerman contracted COVID and is not available today. You can thank him for not coming. Yes, Your Honor. I believe that he called the clerk's office. He was instructed not to appear. This case concerns a series of Facebook warrants that were issued between March of 2019 through February of 2020 for offense conduct that took place the prior year-over-period of about two months from late August 2018 to October of 2018. We would submit that the warrants were sweeping and the requests were the entire contents of Facebook accounts. They were limited in time with regard to other co-defendants, including Luis Zelaya-Veliz, from eight months before the offense conduct until the time that... This is, what is it, the fourth search warrant that has been issued for this particular gang? There were four search warrants that were issued. But there are four prior search warrants, aren't there? There are a total of four search warrants that were issued. The first one, there's no standing that the co-defendants have or that the defendant appellants have. What I'm saying is it's interesting. It may be a cumulative process where there wouldn't be anything wrong as long as one warrant had probable cause to use the fruits of the first warrant or the second warrant to build a case for probable cause for the third or the fourth. In other words, it doesn't matter. I mean, it would seem that the accumulation of the information would be perfectly legitimate as long as each warrant met a probable cause standard. Your Honor, I don't disagree that prior warrants developed information that assisted in the later warrants. That information recovered in the earlier searches would not be usable in the present one? No, I'm not saying that, Your Honor. The warrants that are challenged are the second, third, and fourth warrants. The first one, the defendant appellants don't have standing challenge that because it wasn't their Facebook accounts. The primary argument, though, is that the three warrants that are being challenged were unnecessarily overbought. The warrant with respect to defendant appellant Luis Gonzalez asked for the entire contents of his Facebook without any temporal limitation at all. Let me ask you this. I think you're all familiar with the capabilities of social media. And the stories here are really quite heartbreaking about these very young women being shipped out and treated like merchandise and advertised. And this, I would say, is a situation where it says EB was beaten with a baseball bat 26 times on two separate occasions. And the number of men that these minors were expected to service in order to provide adequate revenue for the gangs. One of the poignant details is that they are expected to do, quote, double duty on weekends. They're heartbreaking crimes. Now. The question suggests itself. If the members of the MS-13 gang are using Facebook as a medium for the coordination of their activities to establish extensive networks. And also, I would assume for the advertising and the marketing of these minors. Why would we have. Why wouldn't. Law enforcement have. The ability to access. Facebook accounts. In order to disrupt. The kind of activities. That the gang has used the Facebook. Accounts. To enable. Seems only fair, doesn't it? Your Honor, the offense conduct in the case that was indicted. And I was also set forth in the warrant affidavits took place over a specific period of time. It took place from August the 27th, 2018, when minor to escape from a shelter care facility in Fairfax County. And you think it's reasonable for us to assume that that's the first time that this gang was involved in trafficking young women. That was like, that's the reasonable conclusion you want us to come to. That that must have been the first time because obviously like they never would have done that before. Because you have evidence of trafficking on that date. You think that there's no probable cause to believe anything other than that had to be the first time that they did it. Your Honor, there is no other evidence in the warrant affidavit that these individuals have participated in other sex trafficking prior to that date. That is our submission on that. And just because a person is a member of a group organization, that's not necessarily legal in itself. And one should not to jump to the conclusion because they're affiliated or associated, this case with the MS-13 gang, that they're involved in lots of other crimes. And also with regard to the over breadth of the warrants, particularly with regard to Luis Gonzalez, we're talking about getting Facebook records that could go back 15 years. That would not prevent law enforcement rummaging through all of his data to see if he's potentially committed other crimes in the past. The Blake case from the 11th Circuit that was decided in August of 2017 is actually very similar in a lot of ways to this case. It was a sex trafficking case and the defendant in that case alleged that the warrant for the Facebook records was over broad because it was unlimited in scope. A lot of the information here came from EB. And she provided nicknames and identified photographs and the rest. I'm thinking it must have taken a great amount of courage for this young woman to have come forward and talk as she did and provided the information that she did to law enforcement authorities. And she subjected herself in doing this to retribution and revenge. It seems fair to assume that those people whom she inculcated would not take kindly to what she was conveying to law enforcement. And I point to the courage it must have taken her to do what she did. And I think that would provide a law enforcement with a sense of the veracity of what she said. That she was doing this at some risk and peril to her very being. And in some ways it's a statement against interests, which the federal rules of evidence regard as having an indicia of reliability. And I'm wondering why the same indicia of reliability could not apply to a young woman who came forward in the face of such hazards. I don't disagree that EB in this case was traumatized. And that is recognized and there's no disagreement there. The issue before the court, though, is whether the warrants for the Facebook records in themselves were overbroad. And there are arguments that are set forth in the brief with regard to Luis Gonzalez and Moises Zelaya Valiz. That there's no accusation in the warrants that they had used Facebook to advance the crimes. But I also understand that the FBI agent sets forth his experience with regard to that to attempt to cover that. But the primary issue here is are the warrants overbroad? And while EB certainly identified individuals from pictures that were from Facebook accounts. Are the warrants themselves overbroads when there are no time limitation with regard to Luis Gonzalez. And with regard to the others, it's eight months before the offense conduct and many, many months afterwards. From seven to even more than a year after the offense conduct. Where the government is also getting their GPS location data with their demanding from Facebook. It's our position those warrants were not cabined off appropriately. As the 11th Circuit said, the warrants there was also a sex trafficking scheme that involved two different minors at least. Is that the warrants could have been limited to request the messages sent to or from the person suspected at the time of the offense conduct. That these warrants were unnecessarily overbroad. That going into a Facebook account is like it's a window into the person's potentially into their entire life. We know that from the Riley case. The amount of data that's accessible now through a cell phone. But same thing also with a Facebook account. But also I think it's important to distinguish between. Why do you make that connection? So I get Riley. But sort of the point of Riley is that it's like it's everything. But Facebook is like pretty limited. It's only the things that you're making available to other people by and large. I don't disagree with that. But a lot of people put an incredible amount of information out about themselves in Facebook. There's more to it too.  It just seems very different than Riley. I'm not sure why that's relevant here. But you want to say a cell phone and Facebook are the same. A cell phone feels quite different. And so the principles that Riley espouses seem not to apply to Facebook. Because Facebook is designed to be the stuff that you're putting out to other people. I believe that's incorrect, Your Honor. The majority of the information that was used by the government here and its case in chief were private messages that were exchanged between the defendants in the case. So there is a whole private area to Facebook that's not open to the public. And my understanding, all these accounts were closed with regard to the information that was used at trial. And the information used at trial, I think, is important to highlight that that was, as the government stated in its brief, almost all the information used against the defendants from this great big Facebook grab that they undertook was between August 27, 2018, and October 11, 2018, which signifies that the government grabbed an enormous amount of data that had nothing to do with these crimes and was freely able to sift through it. But in line with Judge Richardson's comment about putting information out to other people, didn't they use their Facebook accounts to market these young women? Your Honor, there were some messages that were sent to particular individuals, but not posted online, in my understanding, for the public to view. But there's private individuals that are exchanging information over Facebook. Excuse me, go ahead. The 11th Circuit, as you know, in Blake, relied upon good faith to uphold warrants like this. Why shouldn't we do that? Your Honor, that's decided in August 2017. These warrants are issued in March of 2019, June of 2019, July of 2019, February of 2020. And I understand that the Blake did uphold that decision. In fact, it said this is likely very much overbroad, but this is a new area. We're going to go ahead and apply good faith. How many times does the FBI get the good faith exception applied to these types of cases? But in the 4th Circuit, it's new. It is new, but I think the FBI is a national organization. You can look at the general contours of the law. And Blake is not the only court that has criticized these types of overbroad warrants. How do we determine good faith exception on behalf of an officer? Is it a law of the circuit? Do you sort of like to clearly establish the basis of the unity or how do we determine the basis for good faith or not? I think that in our view that this is an unpredictable warrant and a reasonably well-trained agent would know that it was facially deficient because it was so broad, especially with one regarding Gonzalez, that was unlimited in the scope. There is a recent case out of the Middle District of Georgia. It's cited in our reply brief. Wait, your position there is that they would know more better than the district court? That the agent is supposed to be better than the district court judge at figuring out the law and that that would have been obvious? The Middle District of Georgia recently cited Blake in a case saying that law enforcement has been on notice since then, 2017, that there are these overbreath problems with these warrants for social media accounts. These officers and especially in this case lays out all his training authority, all his knowledge of Facebook, which you would expect to actually be more than a district court judge, since he is purportedly an expert in how Facebook works and all the different types of data types that you can get. And these warrants are clearly designed with the some of them has 16 different categories. And I think a couple of 18 to capture the universe of information that Facebook has. We think they're on. Thank you. Thank you. My name is Maureen Kane. I represent the United States. Your Honor, the district court properly ruled that the search warrants were not overbroad with respect to the time frame. Do we have to go there? Can we rely, as did Blake in the 11th Circuit, on a good faith document? You certainly can, Your Honor. When looking at the district court's analysis, the district court did find, though, that there was no Fourth Amendment violation in terms of the time frame that was sought for all sets of warrants. And for the types of data that was sought, it was supported by probable cause and it was particular lies. And and then alternatively, the court said, even if there were an issue, if this honorable court were to disagree and good faith reliance would apply. So can you help me a little bit with that? Right. We you might have been here earlier. We've had some discussions about the order of operations. And, you know, we typically think about, you know, certain questions is coming before others. And logically, whether there's a constitutional violation comes before or whether there was good faith. It is true that that's not like a steel code requirement. Right. We don't have to do that, as Judge Wilkinson pointed out earlier. But is there is there a principle that you see coming out that that we tend to try to provide guidance, that we try to address the constitutional questions where that answer is, is apparent to us rather than perpetually relying on good faith and leaving both law enforcement officers and lower courts in the lurch? I believe, Your Honor, that the courts have done a good job with talking about the Fourth Amendment, whether there's a violation or not, or discussing certain issues and why these are difficult issues, especially for a law enforcement agent and with the courts disagreeing on what's considered overbroad and what's not. I do think it's helpful for everyone involved to get rulings rather than just jump straight to good faith at times. However, it's the same issue we have in qualified immunity context. Right. We often have the authority to both look at whether the law is clearly established and whether there's a constitutional violation. And while the court has told us we may do them in either order, it seems to express a preference for reaching the constitutional question and not just perpetually relying on the clearly established prong. I think that's correct. Is that an analogous context here? Yeah, I think that's correct, Your Honor. And with respect to this issue about... I'm not sure of that. I wish that was the law. I'm not sure the Supreme Court has told us to go to the constitutional order. And then I think it told us the opposite. You go to the narrow ground. You go and see if it's clearly established under Section 1983. I don't like it. I wish it was. Maybe I'll go find out if it says what Judge Richardson said, that you go to the constitutional one. But I can tell you this court has not done that in those kind of cases. And in this case, we're kind of confronted with the same situation. What can be added here is there can be... It seems to me you could put other evidence of training in, as Judge Wilkinson alluded to in the previous case. And as a case evolves and as time evolves, more and more information will come out. And that will become more of a challenge to then bring something, say, good faith. That's kind of the way I see it. But if it is as Judge Wilkinson said, Judge Richardson said, that we are said to go to the constitutional issue first. I hope that's the law, but everything I know of, that's not it. I've been wanting that to be the law, but it's really the other way. Courts go out of their way to get rid of a case by simply saying the law is not clearly established. That's the hard issue. And that's kind of what happens in these cases here. So my review of the case law, there appears to be a lot of analysis as to whether there was a violation of the Fourth Amendment or not in this Facebook and Instagram context. And then I have seen a number of cases where they say, OK, we are going to rule affirmatively on whether there was a constitutional violation or not and then get to good faith. But then there's also a number of cases that I cite in the brief where the district court talked about the issues and then said, but, you know, it's such a close call. I don't have to rule on it today. So I'm going to go to the good faith analysis. And so I do believe it's just a matter of this honorable court's discretion as to whether you want to actually rule on the Fourth Amendment violation or the Fourth Amendment issue, whether there was a violation or not, or just go straight to the good faith. David here was very long and very detailed. The heart of it, I think, was Evie's testimony and what she told the officers. And I know you don't. I mean, probable cause is less than absolute certainty. And I'm wondering why it isn't. We don't need to rule broadly with respect to Facebook accounts, but we could take cognizance of the particulars of Evie's testimony where she knew the nicknames and she knew that she identified people from the from the photographs. And there was a very Facebook search warrant. It provided the full evidence of the identities and the it was a variable goldmine of information, communications, photographs, videos. And so my my thought is, you know, they're going to utilize social media for their communications and photographs and arrangements of sexual encounters and everything. These the social media were the tools of their their trade, and they made clear the availability of underage minors like Evie for sex, along with other people that she was forced to engage in relations with. And if they can, if they want to utilize these these social media accounts and these Facebook accounts to establish connections that enable them to advertise essentially the availability of young women. And and this this I used to think that these gangs relied on drugs as their primary source of revenue, and perhaps that's still true. But increasingly, what we're saying is that gangs like MS-13 are relying on sex trafficking as a major source of revenue. And this makes it clear it isn't it's no longer just drugs that fuel the financial engines of these of these violent gangs. It's it's sex trafficking and sex trafficking of minors in the most brutal way. If they don't if these minors don't comply, they get beaten repeatedly with baseball bats. It's horrible. It's hard to imagine anything worse. And, you know, just the details that stick in your mind that that they're expected to do a certain amount of this of sexual activity during the week and then during weekends when most Americans are taking off, they've got to do double. And that's just horrible. And if they if they're going to use Facebook to set all this up and to finance themselves and provide revenue for themselves, it seems only fair that Facebook warrants would help disrupt this kind of activity. We had a whole lot of evidence was taking was taking place here. I think I think that's the nub of it. That's correct, Your Honor. And with respect to this concept that somehow the Blake decision out of the 11th Circuit should be controlling in this circuit, the Blake decision is distinguishable on so many levels. The Blake decision that those Facebook search warrants were issued after the arrest, after law enforcement was able to do their investigation to determine who the defendants were. In this particular case, we had a young girl, 13 years old, beaten black and blue, suffering from sexual sexual STDs, and she was only able to tell law enforcement four names. Luis and Raina sold her for sex. Sonic and a guy named Jose beat her with a baseball bat. And so we are in a totally different posture with with where we were when we got these search warrants and the Blake decision. And when law enforcement went to get the search warrant on Luis Figo's Facebook account without the temporal limitation, law enforcement is investigating a much broader scheme than just EB's sexual exploitation. The actual basis for this case is, except to the extent it applies to the warrants, it's really not an issue in this case. You know, everybody's going to agree, this is absolutely horrible. But we are a court of law, and so when we focus on the law, it doesn't always come out the way we want to. We personally aren't the ones that are making the decision. I mean, if I'm doing it as a father, if I'm doing it as a brother, it's a different thing, but we're judges. So one of the initial concerns is that you've got two warrants, and there seems to be no temporal limitation in those warrants. And EB's testimony does not seem to provide probable cause for a warrant with no temporal limitation. How do you respond to that? So with respect to the warrants done on the accounts for Luis Alberto Gonzalez, it was reasonable for law enforcement to seek the warrant without a temporal limitation at that point in time, because we were trying to figure out who is Luis. We see a guy who's got numerous aliases with Luis Figo, Luis Alberto, Luis Gonzalez. The warrant affidavit talks about an address that's tied to one of the cell phone accounts that was provided to EB while she was being sex trafficked. And that address went out to an address in Leesburg, Virginia, which ultimately we learned was a fake address. It was nonexistent. It's not a residence. And we're seeing cell site location data that's putting Luis Alberto Gonzalez over near an apartment complex in Queenstown, the Queenstown apartment complex in Maryland. And so it is critically important for law enforcement to be able to obtain the warrant in the way in which they did to learn the identity of this individual who's using multiple aliases, multiple names. There are multiple addresses tied to him. And the Supreme Court's Andresen decision allows law enforcement to look for mere evidence that would aid in the apprehension or the conviction for the crimes under investigation. Here's a question with the temporariness of it. If you look at EB's testimony, it does kind of give you specified time. Yet, as Wilkerson earlier alluded to, the cumulativeness of the warrant. Typically, we start narrow and then we go broader. This is a broader going narrower, which I don't think is the favorite way to do the cumulative aspect of it. But when we're looking at this, the question really is why not start with a narrow warrant and then go there? They started with a broad one, no temporal indication, and then come here. That seems to be a problem. So the United States submits that the way in which law enforcement did it in that fashion was reasonable for the facts and circumstances of this case. Because, again, we're trying to track down the identities of numerous individuals who are co-conspirators of this guy named Luis, who were involved in beating the 13-year-old girl with the baseball bat and sexually exploiting her. And so it was important. I understand what you're saying. You see, when we are talking law enforcement, many times we're saying what they can and cannot do and how we restrict them. The court, when we issue things, we're simply saying, you have all these tools, just do it right. If you do it right, you get the same result. But when you do it in a way that's not permitted, in an overbroad fashion such as this, you create a problem. Because when we write these cases, they don't just apply to this MS-13 gang. It applies to everybody. That's the big issue. That's why if we are dealing with as applied just to these people only, who can disagree that it's a good idea because you caught them? That's a good idea. But the problem is when this court writes an opinion, it applies to every citizen in full circle. Every one of them. And it doesn't matter whether you created a crime, whether you ever done anything wrong or not. That means they can get warrants just like this against you, whether you've done anything or not, in the same manner. So that's the problem. But ultimately, when you look at a case like this, that's why I asked. The Blake case does kind of track the situation and it points out the conundrum this court is in. Wilkinson alluded to it in the earlier case that you get into, which the court then is called upon to do stuff like Facebook and all that kind of stuff. Well, maybe that's why the Supreme Court did create that little out in certain cases like this. And many cases that are confronted with issues like this, they do go to that Leon good faith exception. Maybe a cop out for some, but at least sometimes you don't want to decide something here when it will take care of this matter, but it also will preserve it so it can be dealt with perhaps in a more informed way when the next one comes. Because there's a cumulativeness of the precedent, there's a pre-cumulativeness of the cases and how we deal with them. Yes, and I agree with your honor and certainly defer to your honors as to whether you want to address the Fourth Amendment issue, in your opinion, or if you just want to go straight to the good faith reliance. Can I ask a record question? When I look at what I think is warrant number two, which is at page 1381, the attachment identifies, it says associated with user IDs or accounts, but it doesn't give any user IDs, it just gives these account numbers. And it's, you know, however many of them, and there's no Luis Gonzalez identified. Is this the Luis Gonzalez warrant? And this is why you're sort of, because he doesn't identify himself. He's not known as Luis Gonzalez. That's now who we know who he is. But there's a Luis Figo and Elizabeth Hernandez and Noel Martinez. The idea is that we're trying at this point in time, you're trying to figure out who this person is, who is it that's using these accounts? Yes, that's correct, your honor. We are trying to determine who these individuals actually are. However, it's common for law enforcement to use specific account numbers as well, just based on how Facebook keeps track of certain accounts. Because you don't necessarily know the government name of the person using a Facebook account. Correct. And these people are able to change their Facebook usernames. So if we just said Luis Figo, we're seeking a search warrant on Luis Figo's account, but then he changed his name to something else, Facebook won't know who we're trying to get the search warrant on. Might also include some guy in Colorado whose name happens to be Luis Figo and has nothing to do with this. Correct. Correct, your honor. So law enforcement seeks to put the account number in as well. My friend Judge Wynn brought up about whether Leon would apply here. That's one way of narrowing a ruling. But another way of making sure that we don't overstep or be embarrassed by the future. I don't think anybody's talking here about saying Facebook warrants as a general matter are just A-OK. I mean, the answer to that has got to be maybe so, maybe not. But I think you can make clear in a decision on a Facebook warrant that you're ruling on a narrow basis simply with respect to this activity with this information in hand. So, yeah, you can use Leon to narrow it and say that we don't want to, but the particulars required by probable cause are an equally effective way of narrowing it. You don't need to go any further than saying, you know, there was probable cause that this activity was being conducted by these people. This is the information that it would unearth. The particulars to the gang and the crime and the methodology and that goes, that is really considerably short of saying Facebook warrants as a general matter are just going to, we're just going to say, we're just going to green light them. I don't think anybody necessarily wants to do that unless there's damn good reason to go into it. So that's what I'm thinking you can head for Leon, but you can also narrow it by just saying we don't need to go any further than these facts and what was happening. Here's what EB said, and here's what they wanted to find, and it was covered by the statutory violations and the particulars of the crime and all the rest. You know what I'm saying? That's exactly right, Your Honor. And when it comes to these Fourth Amendment cases, each case is very fact specific, and law enforcement is dealing with very different pieces of evidence and facts at the time that they go and they do these search warrants, which is why this Blake decision, it's being thrown out there, but it's a totally different factual setup, and they are in a totally different investigative phase. They've already charged the case at that point in time. Not to carry this much further, but at least I think it is a significant difference that if the officers had started with a narrow warrant and build upon that to get a broader warrant and build upon it to get a broader warrant, it certainly is an instance of which we want to use as an example. Here, this first warrant has no temporal limitations on it. It's a very broad warrant. You didn't do what you do in journalism. You did the inverse pyramid. You didn't come back to narrow it there. That cannot be the way we want to tell officers to move forward on it. But I don't want to debate your point. I'm just saying that's a perspective that I have on it, and reasonable minds disagree. And I respect that, Your Honor. But back then, law enforcement was very much trying to figure out the identities of the individuals who exploited this 13-year-old girl, both physically and sexually, and trying to figure out the connections between these co-conspirators because law enforcement knew, based on her statements, that there were a number of people involved. Moreover, they were looking at MS-13 as an enterprise and engaging in a number of crimes. And so the district court properly found that the search warrant was not overly broad, as to Luis Figo's accounts, and properly rejected the defendant's arguments that the search warrant should have only been limited and only covered the timeframe of August 27, 2018, through October 11, 2018, which is when Minor 2EB was missing and being exploited by the gang. Thank you very much, Ms. Cain. And let's hear from Mr. King in rebuttal. Thank you, Your Honor. Thank you, Your Honor. The agent in this case very well knew what the time period was when he sought the warrants. He knew exactly the date when EB escaped from a shelter care facility in Fairfax County on August 27, 2018, and when she was recovered in Maryland on October 11, 2018. I know that we've had some back and forth about that, but the agent knew precisely what the dates were. And with regard to the warrant for – and Luis Figo is Luis Gonzalez for that unlimited timeframe, and for the others, very broad timeframes of 18 or more months, and in the later ones, requesting GPS data. We're not saying that warrants for Facebook records can never be good, but they can be narrowly tailored to make sure they don't capture this enormous amount of data. And Judge Wilkerson, you mentioned, well, there's the argument that they can be just cabined off because the warrant itself cites the offenses that the agent is investigating, and then there's the attachment. Well, it's a dual attachment. One, this is all the stuff we want to seize, which is everything. But – I'm sorry, we want to – want disclosed by Facebook, which is everything, but we're only going to seize what's listed in the next attachment, which essentially would be evidence and instrumentalities of the crime. As we set forth in our brief is that they seized everything. That's what they actually did, and that was all provided in discovery to all the co-defenders, the entire Facebook accounts for everybody. And until this day, we haven't received any notice from the government that all the non-responsive data has been cabined off, been returned to the defendants, or deleted. The warrants seized what they demanded, which was everything. And that's an additional reason why they're overbroad. And with regard to – I just wanted to make the distinction. I know we have the Cobb case from our circuit that involves the search of the computer, and the probable cause there was there's something bad on the computer based on the phone call from the defendant in that case to family members saying, get rid of the computer. So you understand that you don't know exactly where on the computer the bad data might be, and it ended up being child pornography on that computer. Digital data from social media accounts is very different. One of the justifications that's been agreed to by courts, put forth by prosecutors with regard to computers and cell phones, you can change the data. You can hide files. You can disguise data or like a legal picture for something that is in some other file, so it's not easily discoverable. None of that can be done with Facebook. That's controlled by Facebook. So grabbing the entire Facebook account, we have to search everything so we can find the bad stuff, is not appropriate. These can be limited in time. I think the reasoning, Blake, is persuasive authority. The law enforcement here, maybe they got it partway through, and they changed templates from the unlimited warrant, and let's limit this down because we know what we're doing is inappropriate. But yes, I agree with Judge Wade. Maybe they just knew the identity of the people, right? How about respond? At least let me understand your response to the argument that one of the pieces of information that was unknown at the time of Warrant 2 is who this person is. And that is a relevant consideration for law enforcement because arresting the wrong person is bad. And so to identify that person, what they say is, we want to see. Not just the criminal activity they're engaged in, and maybe that extends beyond the time, but we're also trying to figure out who this person is. And so that is the reason that we need to look more broadly. I in part disagree with that. They knew that those accounts were associated with Luis Gonzalez. They didn't know Luis Gonzalez's perhaps name, but they have photos from those accounts that show that it's him that EB has identified. But that's the point, right? So I can have a photo of you, but that doesn't tell me who you are, right? I need, in order to indict you and arrest you and pick you up, I need to know your government name, your government identifiers, right? Not your nickname or a picture of you. And you can get that, I would assume, by asking for two months of the Facebook data and all the credit card information, whose name is on this, what they always request, rather than the entire account going back to whenever it was started, which would be 2006. So your argument is that there's evidence both narrow and broad, and that they should only ask for the narrow. But that's still to say that is still evidence that is relevant to the crime. It's evidence of the crime, what the person's identity is, right? It's why when we do search warrants of houses, we've approved looking for male, right, in order to identify the owner of the house. It's not that that male is itself evidence separate from identity, but identity is evidence of the crime. It is. You have to identify the person who committed the crime in order to properly charge them. Well, not necessarily. You could charge somebody as John Doe, but that typically does not happen. I think Judge Richardson is right in the point that he makes, that you can have a search warrant for mere evidence or for relevant evidence of a crime. And you don't have to have probable cause to identify the individual before you search for evidence that would help with regard to the criminal offense. And the point that Judge Richardson, I think, rightly raises, it's better off that they just don't go arresting people until they're certain who it is. So the problem I have with your position is that you think that we have to have probable cause as to someone's identity before we look for evidence of someone's identity. But that can't invariably be true. You can look for evidence of a criminal offense. You don't have to look that would help identify someone, but you don't have to have that individual's identity before you look for evidence. I mean, there's Supreme Court law that states that. I take your Honor's point, but the position here of the defendants with regard to the warrant that has no temporal limitation at all, the FBI knew that that was Luis Figo's or Luis Gonzalez's account. But the warrant for that account… They already had information in the bank account with Luis Gonzalez's name on it when all this happened. Yes, Your Honor. It was a massively broad warrant that grabbed all the information from all his accounts, and it was unlimited. It was unnecessary. It was clearly overbroad, and it amounts to, in our view, a general… Thank you, sir. Thank you, Your Honor. I see you're court-appointed, Mr. King, and I want to express the court's appreciation for the good job that you did. Thank you, Your Honor. And we will move into our final case.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Julius N. Richardson